984 P.2d 56 (1999)
The PEOPLE of the State of Colorado, Petitioner,
v.
David Anthony WILLIAMS, Respondent.
No. 98SC109.
Supreme Court of Colorado, En Banc.
June 28, 1999.
As Amended on Denial of Rehearing September 10, 1999.[*]
*57 Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Criminal Enforcement Section, Denver, Colorado, Attorneys for Petitioner.
David F. Vela, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent.
Justice HOBBS delivered the Opinion of the Court.
The prosecution challenges the court of appeals published opinion, People v. Williams, 961 P.2d 533 (Colo.App.1997) which held that an information charging a defendant with criminal trespass was deficient because it failed to state the ulterior crime that the defendant allegedly intended to commit. A jury found the defendant, David Williams (Williams), guilty of attempted *58 robbery, first degree criminal trespass, and third degree assault. The trial court entered judgment accordingly. As one of several issues on appeal, Williams challenged the sufficiency of the information, arguing that it provided him with inadequate notice of the offense charged. The court of appeals reversed his conviction for criminal trespass due to a defect in the information. We granted certiorari on two related issues regarding the information.[1] We conclude that the information charging Williams with criminal trespass was defective in form, but not in substance. It did not specify the ulterior crime that Williams intended to commit; however, the information recited the statutory elements of the crime of criminal trespass. Because the omission of the ulterior offense was a defect of form, it does not warrant automatic reversal of Williams' conviction. Notably, Williams did not seek a bill of particulars. Moreover, the surrounding circumstances of this case demonstrate that Williams, in the preparation of his case, had adequate notice of the ulterior crimes that the prosecution alleged he had intended to commit. Accordingly, we reverse the court of appeals' judgment and reinstate Williams' conviction.

I.
On July 18, 1995, Williams and a companion had been drinking alcohol outside of a liquor store in Aurora, Colorado. According to a security guard on duty at the time, the two men had accosted customers in the parking lot. As the victim walked from the liquor store to his car, Williams approached him, asking for spare change. When the victim refused, Williams followed him to his car and attempted to prevent him from closing the car door. Williams reached into the car, hit the victim in the mouth, turned off the ignition, and searched through the victim's pockets and an athletic bag which was sitting on the passenger's seat. Finding nothing of value, Williams left the bag and its contents in the car. Thereafter, Williams' companion approached the passenger's side of the car and delivered several additional blows to the victim's head.
The prosecution charged Williams by information with three counts: attempted robbery,[2] first degree criminal trespass,[3] and third degree assault.[4] The jury found Williams guilty of all three offenses. The information charging Williams with criminal trespass read as follows:
AS A FURTHER AND SECOND COUNT, AND ROBERT S. GRANT, District Attorney as aforesaid, in the name and by the authority of the People of the State of Colorado, further informs the Court that on July 18, 1995 at the said county of Adams in the State of Colorado, DAVID ANTHONY WILLIAMS, did unlawfully, knowingly, and feloniously enter the motor vehicle of another, to-wit: Loren Eisele with the intent to commit a crime therein;

Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Colorado.
(Emphasis added). Williams did not challenge the sufficiency of the information at any time prior to or during his trial.
On appeal to the court of appeals, Williams challenged the sufficiency of the information. More specifically, Williams challenged the fact that the information failed to specify the ulterior crime in the trespass count. He contends that this omission failed to provide him with the requisite notice required of the charging document.[5] The court of appeals *59 reversed Williams' conviction, holding that the information charging him with first degree criminal trespass was fatally deficient.
In doing so, the court of appeals noted the similar language present in both the criminal trespass and the burglary statutes of our state. Criminal trespass, like burglary, requires that the defendant have an intent to commit an ulterior crime. Thus, analogizing these two crimes and relying upon Gomez v. People, 162 Colo. 77, 424 P.2d 387 (1967), and Martinez v. People, 163 Colo. 503, 431 P.2d 765 (1967), the court of appeals held that the information was insufficient, insofar as it failed to adequately apprise the defendant of the ulterior crime he allegedly intended to commit upon entry of the victim's car.
The state argues that the information charging Williams with criminal trespass was sufficient. Alternatively, the state argues that omission of the ulterior crime does not require reversal of Williams' conviction because he did not demonstrate prejudice to his ability to prepare for trial. We hold that the omission of the ulterior crime amounts to a defect of form. Williams could have sought additional specificity through a bill of particulars. He did not seek one. The record demonstrates that he did not suffer prejudice from the trespass count's lack of additional specificity because he had adequate notice of the ulterior offenses the prosecution sought to prove, assault and attempted robbery, in connection with Williams' trespass into the automobile. Accordingly, we reverse the judgment of the court of appeals and reinstate Williams' conviction. Because Williams did not suffer prejudice as a result of the lack of additional specificity in the criminal trespass count, in light of the surrounding circumstances of the case, we affirm his conviction.

II.
We hold that a criminal trespass count which fails to specify the ulterior crime that the defendant allegedly intended to commit is defective in form, but not in substance. Examination of the record reveals that Williams had notice of the ulterior offense the prosecution sought to prove and, consequently, suffered no prejudice from the criminal trespass count's lack of additional specificity.

A.

The Form/Substance Distinction
The first degree criminal trespass statute, section 18-4-502, 8B C.R.S. (1986 & 1993 Supp.) provides:
A person commits the crime of first degree criminal trespass if such person knowingly and unlawfully enters or remains in a dwelling of another or if such person enters any motor vehicle with intent to steal anything of value or with intent to commit a crime therein.

(Emphasis added).[6] The information charging Williams with criminal trespass contained the statutory language, "with intent to commit a crime therein," but did not state the specific crime that Williams allegedly intended to commit upon the trespass. Thus, the threshold issue is whether an information charging a defendant with first degree criminal trespass must specify the ulterior crime as a jurisdictional prerequisite. An analysis of precedent, legislative history, and Williams' due process rights lead us to conclude that failure to allege the underlying offense is not substantive error and, therefore, does not require automatic reversal.
An information is a "written statement, signed by the prosecutor and filed in the court having jurisdiction over the offense *60 charged, alleging that a person committed the criminal offense described therein." Crim. P. 7(b)(1). Section 16-5-202(1), 6 C.R.S. (1998), sets forth the requisites of an information:
The information is sufficient if it can be understood therefrom:
(a) That it is presented by the person authorized by law to prosecute the offense;
(b) That the defendant is named therein or described as a person whose name is unknown to the informant;
(c) That the offense was committed within the jurisdiction of the court or is triable therein;
(d) That the offense charged is set forth with such degree of certainty that the court may pronounce judgment upon a conviction.
Rule 7(b)(2) of the Colorado Rules of Criminal Procedure mirrors section 16-5-202(1). When an information satisfies each of these requirements, it invokes jurisdiction of the court. An information serves two vital interests of a constitutional dimension: (1) it provides the defendant with notice of the offense charged, as well as the factual circumstances surrounding the offense so that the defendant can adequately defend him or herself; and (2) it protects the defendant from further prosecution for the same offense. See Cervantes v. People, 715 P.2d 783, 785 (Colo. 1986); People v. Albo, 195 Colo. 102, 106, 575 P.2d 427, 429 (1978).
Colorado has followed the modern trend of testing the sufficiency of the information based upon the fundamental objectives the information serves rather than technical pleading requirements of the common law. See Robert J. Dieter, Colorado Criminal Practice and Procedure § 2.10, at 114 (1996). This functional approach mirrors the efforts of the federal criminal code and follows the lead of the Supreme Court. See Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (noting that a charging document is sufficient if it, "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense"); Fed.R.Crim.P. 7(c) (liberalizing the technical common law pleading requirements).
In determining the sufficiency of a particular count alleged in an information, we have restricted our examination to the four corners of that count to make sure that the essential elements of a crime were alleged therein directly or incorporated by specific reference, and we have not allowed a defect in one count to be compensated for by averments contained in another count.
Cervantes, 715 P.2d at 786; see also People v. Moore, 200 Colo. 481, 485, 615 P.2d 726, 729 (1980); Martinez, 163 Colo. at 507, 431 P.2d at 767.
An information that fails to charge an essential element of an offense is substantively defective. See Cervantes, 715 P.2d at 786; People v. Bowen, 658 P.2d 269, 270 (Colo.1983). This essential element requirement is satisfied if the language in the charge tracks the statutory language. See People v. Hunter, 666 P.2d 570, 573 (Colo. 1983); People v. Moreno, 176 Colo. 488, 496, 491 P.2d 575, 580 (1971); Gallegos v. People, 166 Colo. 409, 413, 444 P.2d 267, 269 (1968). "It is generally sufficient that the indictment [or information] set forth the offense in the words of the statute itself, as long as `those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.' " Hamling, 418 U.S. at 117, 94 S.Ct. 2887 (quoting United States v. Carll, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882)).
The information charging Williams with first degree criminal trespass contained essential language identical to that found in the first degree criminal trespass statute, section 18-4-502. It alleged that Williams entered the motor vehicle of Loren Eisele "with the intent to commit a crime therein." Because the information at issue utilized the language prescribed by our legislature, we must conclude that it "sufficiently ... advise[d] the defendant of the nature of the charges against him." Hunter, 666 P.2d at 573.
*61 Williams argues that precedent mandates the opposite conclusion. He contends that prior cases preclude this court from holding that repetition of the statutory language alone satisfies the requirement that an information charge the defendant with all essential elements of the offense of first degree criminal trespass.
We disagree. Our precedent to this effect has been substantively altered by subsequent legislation. In Gomez, we held that an information count charging a defendant with burglary was fatally defective because it failed to state the specific crime which the defendant allegedly had intended to commit. 162 Colo. at 80, 424 P.2d at 389. Gomez was charged in a criminal information with feloniously, willfully, and maliciously breaking and entering "the building of Edith Rosamond, located at 2339 West 33rd Avenue with the intent then and there to commit a crime." Id., at 78, 424 P.2d at 388. We concluded that, "by the great weight of authority," an information charging a defendant with burglary "must specify by name, at least, the ulterior crime which it is alleged the accused intended to commit upon entry of the building." Id. at 80, 424 P.2d at 389.
Subsequently, in Martinez, we re-articulated this holding. 163 Colo. at 506, 431 P.2d at 766. Martinez involved a multi-count information, one of which charged the defendant with burglary. Id., at 505, 431 P.2d at 766. Relying upon Gomez, the court held that the burglary charge, charging defendant "with intent then and there to commit a crime," was fatally defective because it failed to specify the ulterior crime the accused intended to commit upon entry. See Id. at 506, 431 P.2d at 766; see also Henson v. People, 166 Colo. 428, 430, 444 P.2d 275, 276 (1968) (citing Gomez and Martinez for the proposition that a burglary count is fatally defective where it fails to specify the underlying crime); Garcia v. People, 174 Colo. 372, 374, 483 P.2d 1347, 1348 (1971) (stating that "specific intent to commit a specific felony is an essential element of the offense of burglary"); State v. Deedon, 189 A.2d 660 (Del.1963) (finding an indictment charging the defendant insufficient where it failed to specify the underlying crime).
By way of analogy, Williams contends that the holdings in the burglary cases of Martinez, Gomez, and Henson govern the disposition of his case, involving first degree criminal trespass. Williams claims that such a comparison is justified due to the similar language in the current burglary and criminal trespass statutes. While the first degree criminal trespass statute requires that the defendant enter "with intent to commit a crime therein," § 18-4-502, the first degree burglary statute requires that the defendant enter "with intent to commit therein a crime." § 18-4-202, 6 C.R.S. (1998).
However, despite the parallelism in statutory language, the Martinez-Gomez line of cases addressed the law prior to significant legislative amendments that altered both the burglary and the criminal trespass statutes. In both Gomez and Martinez, we based our reasoning upon the statute then in place. In Gomez we stated, "[I]t is to be noted that Colorado has no statute providing that, in the case of burglary, a general allegation of felonious intent, without naming the particular felony intended to be committed, is sufficient." 162 Colo. at 79-80, 424 P.2d at 388. Similarly, and perhaps more explicitly, in Martinez, we explained, "[o]ne of the essential elements in a charge of burglary under C.R.S. 1963, [section] 40-3-5 is that the accused have the intent to commit a specific crime at the very time and place of breaking and entering." 163 Colo. at 506, 431 P.2d at 766 (emphasis added). The General Assembly's subsequent action in amending the burglary and trespass statutes leads us to conclude that an information charging a defendant with criminal trespass that fails to state the ulterior crime is not substantively defective.
In construing a statute, we give effect to the intent of the General Assembly whenever possible. See Cooper v. People, 973 P.2d 1234, 1239 (Colo.1999). In Cooper, we recently analyzed the meaning of Colorado's burglary statute. Therein, we observed that, "although the General Assembly abolished common law crimes not described by the 1971 reenacted Colorado Criminal Code, it took care to note that this abolition did not `affect the use of case law as an interpretative *62 aid in the construction of the provisions of this code.'" Id. When we decided Gomez and Martinez, the burglary statute then in existence required that a person enter "with intent to commit murder, robbery, rape, mayhem, larceny, or other felony or misdemeanor...." § 40-3-5, 3 C.R.S. (1963). In 1971, however, the legislature amended the language of the statute to read: "with intent to commit therein a crime." Ch. 121, sec. 1, § 40-4-202, 1971 Colo. Sess. Laws 427.
Colorado's criminal trespass statute underwent a similar change. Prior to its 1992 amendment, the first degree criminal trespass statute encompassed only those circumstances in which a defendant "enters or remains in a dwelling or if he enters any motor vehicle with intent to steal anything of value." § 18-4-402, 8B C.R.S. (1986) (emphasis added). In 1992, the Colorado legislature supplemented the provision by adding the phrase, "or with intent to commit a crime therein." Ch. 73, sec. 16, § 18-4-502, 1992 Colo. Sess. Laws 404. Upon introducing the amendment to the criminal trespass statute, a presenter for the Colorado District Attorneys Council stressed that the purpose of the change was to "bring first degree criminal trespass ... in line with the language that we have used in burglary counts. You don't necessarily have to go in simply to commit a theft."[7] Hearings on H.B. 92-1078 before the House Judiciary Committee, 58th Gen. Assembly, 2d Sess. (January 23, 1992). The presenter further explained that, under prior law, if the defendant did not intend to do criminal mischief, harass, or sexually assault his or her victim, the defendant's conduct did not satisfy the criminal trespass statute. See id. Thus, while the prior criminal trespass statute applied only to instances in which a defendant entered with an intent to steal, the amended statute encompasses all instances in which a defendant enters with the intent not only to steal, but to commit "a crime"any crimetherein. See § 18-4-502, 6 C.R.S. (1998).
Thus, the change in the criminal trespass and burglary statutes triggered a change in the required pleading of elements in the charging documents. Earlier versions of both statutes required a prosecutor to set forth the specific crime underlying the burglary charge or to specify that the defendant intended to commit theft. Subsequent amendments to the statutory language altered the specificity requirement. When interpreting legislative amendments, we assume that the General Assembly was apprised of existing case law. "We do not presume that the General Assembly makes its deletions and substitutions of statutory language idly." Mid-Century Ins. Co. v. Travelers Indemnity Co., 982 P.2d 310, 315 (Colo.1999).
Decisions of several state and federal courts comport with our holding. The Florida Supreme Court has held that an "information charging burglary is not required to specify the offense which the accused is alleged to have intended to commit." State v. Waters, 436 So.2d 66, 68 (Fla.1983). Basing its reasoning upon "broad reciprocal discovery rules," the court held that, in a burglary charge, it is not "per se" required that the information specify the underlying charge. Id. "Specification of the offense intended is not so essential a part of the intent element as to require that it always be set out in the charging document." Id.
Some states have concluded that an information charging a defendant with burglary is defective when it fails to specify the underlying offense; however, such an omission amounts to a defect of form, not of substance. In State v. Skelton, for example, the Kansas Supreme Court held that an information charging burglary is defective in form unless the "ulterior felony intended by the accused in making the unauthorized entry is specified, but this defect does not automatically result in prejudicial error." 247 Kan. 34, 795 P.2d 349, 359 (1990). Similarly, in State v. Worsley, 336 N.C. 268, 443 S.E.2d 68 (1994), the North Carolina Supreme Court held that *63 an indictment charging a defendant with burglary was not fatally defective where it did not specify the particular felony the defendant intended to commit. The court stated that the indictment adequately informed the defendant of the nature of the charges against him so that he could prepare his defense.[8]Id. at 74. This determination was based, in part, upon the fact that any confusion the defendant may have had regarding the ulterior crime could have been raised by moving for a bill of particulars.[9]Id.

B.

Prejudice Analysis
When an information sets forth the essential elements of an offense in the statutory language, but lacks additional specificity, the defendant may seek a bill of particulars. See Erickson v. People, 951 P.2d 919, 921 (Colo.1998). While a bill of particulars cannot cure a fundamental error in a charging document, it can remedy a defect in form resulting from indefiniteness or lack of specificity that may hinder trial preparation. See People v. Westendorf, 37 Colo.App. Ill, 542 P.2d 1300 (1975). The purpose of a bill of particulars is
to enable the defendant to properly prepare his defense in cases where the indictment [or information], although sufficient to advise the defendant of the charges raised against him, is nonetheless so indefinite in its statement of a particular change that it does not afford the defendant a fair opportunity to procure witnesses and prepare for trial.
Erickson, 951 P.2d at 921 (quoting People v. District Court, 198 Colo. 501, 504, 603 P.2d 127, 129 (1979)).
The information charging Williams with first degree criminal trespass tracked the statutory language of the first degree criminal trespass statute. As required by section 18-4-502, it alleged that Williams entered the vehicle "with intent to commit a crime therein." Nevertheless, the information set forth all essential elements of the crime of first degree criminal trespass. Because first degree criminal trespass requires both the intent to enter and the intent to commit a crime therein, the information count charging Williams with first degree criminal trespass was adequate in substance. The count was defective in form because its lack of specificity regarding the ulterior crime arguably hindered trial preparation.
If not cured by an amendment to the information count, a defect of form may be addressed by a bill of particulars if timely requested by the defendant. "Although the better practice is to provide specificity in the charging document, it is not fundamental error to use the general phraseology of the statute on which the charge is based." Waters, 436 So.2d at 69.
The distinction between a defect of form and substance is critical insofar as the remedy is concerned. See Dieter, supra, § 2.10, at 118. While a defect of form can be cured by amendment any time prior to the verdict or by a bill of particulars, a defect of substance fails to invoke the jurisdiction of the court. Therefore, unless cured by amendment before trial, a substantive defect requires dismissal of the charge or *64 renders void any conviction entered on such charge. See Cervantes, 715 P.2d at 786; Bustamante v. People, 136 Colo. 362, 365, 317 P.2d 885, 887 (1957). Objections to the form of an information must be made before trial or they are waived. See Crim. P. 12(b)(2); Mora v. People, 172 Colo. 261, 263-64, 472 P.2d 142, 143 (1970). Defects in the form of an information which do not substantially prejudice the rights of the defendant do not render an information or judgment of conviction void. See Hunter, 666 P.2d at 573 (holding that, while "better practice" entails including the name of the victim in the information, omission of the victim's name did not substantially prejudice the rights of the defendant).
In determining the substantive sufficiency of an information, "we have confined our examination to the four corners of that count to ensure that the essential elements of the crime were alleged or incorporated by reference." Cervantes, 715 P.2d at 786. We have not permitted substantive defects in one count of an information to be compensated for by other counts of an information. See id.; Moore, 200 Colo. at 485, 615 P.2d at 729; Martinez, 163 Colo. at 507, 431 P.2d at 767. However, in determining whether prejudice has resulted from a defect in form, when additional specificity could have been supplied by a bill of particulars, we look to the surrounding circumstances. See Cervantes, 715 P.2d at 786 (stating "a count in an information cannot be viewed as setting forth a naked charge isolated from any surrounding circumstances"). In Skelton, the Kansas Supreme Court held that if the underlying crime is made
clear at the preliminary hearing or by the context of the other charge or charges in the information the failure to allege the specific intended felony does not constitute reversible error. Such failure cannot result in surprise or be considered prejudicial to the defendant's substantial rights at the trial when the intended felony was made clear in advance of trial.
795 P.2d at 359 (quoting State v. Lora, 213 Kan. 184, 515 P.2d 1086 (1973)) (emphasis added); see also People v. Holt, 15 Cal.4th 619, 63 Cal.Rptr.2d 782, 937 P.2d 213, 247-48 (1997); Stwalley v. State, 534 N.E.2d 229, 232 (Ind.1989).
The issue is whether Williams had adequate notice for purposes of trial preparation and whether he is protected from further prosecution for the same offense in a subsequent prosecution. As we noted above, a defendant may request a bill of particulars seeking specificity when the information pleads the statutory elements of the offense but the count lacks specificity. Even when the defendant has failed to seek a bill of particulars but has raised the sufficiency of the charging document on appeal, we have undertaken a prejudice inquiry on appeal to determine whether the surrounding circumstances demonstrate that the information's defect in form did not cause prejudice to the defendant.
Prejudice is lacking in this case. In People v. Jiron, 44 Colo.App. 246, 616 P.2d 166 (1980), the court of appeals faced circumstances similar to those present here. It considered whether the defendant was prejudiced by an information charging him with criminal attempt to commit burglary when he did not challenge the sufficiency of the information at any stage of the trial and did not raise the issues in the motion for a new trial. The court reasoned as follows:
Defendant claims no surprise or prejudice resulting from the absence of an allegation specifying the ulterior crime to be relied upon by the People in their proof of the elements of burglary. Indeed, he did not challenge the sufficiency of the information at any stage of the trial proceedings, and did not raise the issues in the motion for new trial filed below.
Id. at 247-48, 616 P.2d at 167. Thus, "while specification of the ulterior crime in either the original or an amended information might be the better practice," the court concluded that the information adequately apprised the defendant of the offense with which he was charged. Id.
Williams raised the sufficiency of the information for the first time on appeal. He did not move for a bill of particulars in the trial court. See Crim. P. 7(f); Mora, 172 Colo. at 264, 472 P.2d at 143-44 (finding no prejudice *65 where the defendant failed to question the sufficiency of the information below and did not move for a bill of particulars). Defects in the form of an information do not require reversal unless the substantial rights of the defendant are prejudiced. See Hunter, 666 P.2d at 573. Williams was apprised of the ulterior crimes being pursued by the prosecution. The information recited the following additional charges:
DAVID ANTHONY WILLIAMS, did unlawfully and feloniously attempt to commit the crime of Robbery by voluntarily engaging in conduct constituting a substantial step toward the commission of that crime, as defined by C.R.S. § 18-4-301, in that the defendant did voluntarily perform an act to obtain a result which, if accomplished, would constitute that crime, namely: David Anthony Williams, did feloniously, knowingly and unlawfully attempt to take a thing of value, to-wit: personal property from the person and presence of Loren Eisele by the use of force, threats and intimidation;
....
DAVID ANTHONY WILLIAMS, did unlawfully, knowingly and recklessly cause bodily injury to Loren Eisele;
Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Colorado.
Thus, the attempted robbery and assault charges in the information leave no doubt as to the facts and crimes Williams allegedly intended to commit in connection with the trespass. The police report of the incident and the testimony at trial also left no doubt as to the allegations of time, place, and circumstance of the trespass and ulterior crimes of assault and attempted robbery. See Mora, 172 Colo. at 264-65, 472 P.2d at 144 (examining a defect in the charging document under the circumstances of the case based upon the whole record). Thus, under the surrounding circumstances, Williams was sufficiently advised of the ulterior crimes the prosecution alleged he intended to commit upon the trespass. He was not prejudiced in the preparation of his defense, nor was the information substantially defective as to render him vulnerable to prosecution of the criminal trespass offense in another case. See Cervantes, 715 P.2d at 786.
In assessing whether Williams suffered prejudice, we do not consider the jury instruction in this case. We recognize that, like the information at issue herein, the first degree criminal trespass jury instruction omitted the ulterior crime that Williams allegedly intended to commit.[10] As to the jury instruction, under the case law of this state, and others, "it is ... necessary that the specific ulterior crime be clearly and accurately defined in order to determine if the defendant's intent was that proscribed by the burglary statute." People v. Archuleta, 191 Colo. 482, 485, 554 P.2d 307, 310 (1976); see also State v. Linn, 251 Kan. 797, 840 P.2d 1133, 1138 (1992) (holding that "the trial judge's failure to state the specific underlying felony or felonies and their elements prevented the jury from rendering a lawful verdict"). However, as the court of appeals noted, Williams did not preserve the issue of whether the jury instruction was fatally defective for failure to identify the ulterior crime. While Williams may have been prejudiced by the jury instruction, his failure to raise this issue precludes us from reviewing it. Moreover, any prejudice resulting from an insufficient jury instruction is not a necessary component of prejudice resulting from a defective information. The two are separate and distinct issues. Therefore, we cannot and do not consider the jury instruction in our analysis of the potential prejudice arising from the information's defect in form.

III.
Accordingly, we hold that the failure of the information to specify the offense underlying the criminal trespass charge was a defect of form, but not a defect of substance. Because Williams did not pursue a bill of particulars *66 and, under the circumstances of this case, had notice of the ulterior crimes the prosecution was pursuing and was not prejudiced in the preparation of his defense or protection against further prosecution of the criminal trespass offense in another case, we reverse the judgment of the court of appeals and reinstate his criminal trespass conviction.
Justice MARTINEZ dissents, and Chief Justice MULLARKEY and Justice BENDER join in the dissent.
Justice MARTINEZ dissenting:
The majority holds that the information charging the defendant with criminal trespass was defective because the information did not specify the ulterior crime the defendant intended to commit. See maj. op. at 57. I concur with this holding. The majority also concludes, however, that the information was "defective in form, but not substance," and therefore, the defendant must show prejudice from this defect in order to prevail. Id. at 58. Finding no such prejudice, the majority affirms the defendant's conviction. See id. at 58. I disagree with this latter decision in light of our case law that clearly holds that this type of defect in an information constitutes an error of substance, not merely of form. Because I would follow our precedent and hold that the information in this case was fatally defective, I respectfully dissent.

I.
The majority opinion adequately sets forth the facts of this case. See maj. op. at 58-59. Hence, I will not recount them here except to emphasize two points. The information charging defendant David Williams with criminal trespass provided, in relevant part:
DAVID ANTHONY WILLIAMS, did unlawfully, knowingly, and feloniously enter the motor vehicle of another, to-wit: Loren Eisle with the intent to commit a crime therein.
Thus, the information did not state the specific crime that Williams intended to commit at the time he allegedly entered the motor vehicle.
In addition, the jury instructions with respect to the count of criminal trespass also failed to specify the crime that Williams intended to commit at the time he entered the motor vehicle. The trial court instructed the jury that, in order to convict Williams of criminal trespass, it must find:
1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. entered the motor vehicle of Loren Eisle,
4. with the intent to commit a crime therein.
The jury subsequently convicted Williams of criminal trespass, among other offenses.

II.
In my view, the resolution of this case turns upon the straightforward application of our case law to the facts before us. Thus, I will first discuss that case law in the context of the relevant statutory provisions. I will then address the majority's decision to depart from our precedent.

A.
Section 18-4-502, 8B C.R.S. (1993 Supp.), describes first degree criminal trespass as the crime existed at the time of the defendant's alleged offenses. This section provides that a person commits first degree criminal trespass if such person knowingly and unlawfully enters or remains in a dwelling of another or "if such person enters any motor vehicle with intent to steal anything of value or with intent to a commit a crime therein." § 18-4-502 (emphasis added).
The first degree burglary statute contains language almost identical to the criminal trespass statute. The burglary statute provides, inter alia, that a person commits first degree burglary if he knowingly enters or remains unlawfully in a building or occupied structure "with intent to commit therein a crime." § 18-4-202(1), 6 C.R.S. (1998) (emphasis added). Therefore, the defendant contends that our case law concerning the sufficiency of an information charging burglary is controlling in determining the sufficiency *67 of an information charging criminal trespass. The majority agrees with this proposition, see maj. op. at 61-62 (analyzing our burglary case law), and I agree as well. Hence, I now turn to that case law.

B.
In Gomez v. People, 162 Colo. 77, 424 P.2d 387 (1967), we considered the defendant's claim that his burglary conviction should be overturned on the grounds that the information containing the burglary charge was legally insufficient. The information in that case charged the defendant with feloniously breaking and entering a certain described building "with intent then and there to commit a crime." Id. at 78, 424 P.2d at 388. The defendant asserted that this information was defective because it did not allege the specific crime which he supposedly intended to commit once he gained entry into the building. We agreed. See id. at 79, 424 P.2d at 388.
We explained that "`[t]he rule is well established... that even though in burglary and statutory housebreaking the intent, as defined by law, is simply to commit a felony, it is not sufficient for the indictment to use these general words; The particular felony intended must be specified.'" Id. (quoting 13 Am.Jur.2d § 36, at 341 (1964)). We stated, "`The averment that the accused has broken and entered a dwelling house for the purpose of committing a felony fails wholly to apprise him of the specific offense which it is claimed he intended to commit. The defendant is not to be oppressed by the introduction of evidence which he cannot be prepared to meet.'" Id. (quoting 13 Am.Jur.2d § 36, at 341).
Furthermore, we found that, because the error divested the court of jurisdiction over the count, the information was fatally defective. Thus, the defendant need not have initially objected to the information: "`failure to demur to an indictment which does not specify the requisite intent does not constitute a waiver of the right to raise the objection of a motion for a new trial or on appeal, [s]ince the specific intent is an essential element of the crime.'" Id. (quoting 13 Am. Jur.2d § 36, at 341). As a consequence, we held that "[o]ne essential element in a charge of burglary is that at the very time and place of breaking and entering the accused have an intent to commit therein a specific crime." Id. at 80, 424 P.2d at 389 (emphasis added).
We unequivocally declared that "this is a matter of substance, not form, and must be set forth in the information; otherwise, the charge is fatally defective." Id. (emphasis added). Because of this fatal defect, we reversed the defendant's conviction. See id.
In Martinez v. People, 163 Colo. 503, 431 P.2d 765 (1967), we addressed a similar claim. The information in that case charged the defendant with burglary but failed to specify the ulterior crime that the defendant intended to commit at the time of the unlawful entry. Relying upon our holding in Gomez, we found the information insufficient. See Martinez, 163 Colo. at 506, 431 P.2d at 766. We reiterated that one of the essential elements of a burglary charge is that the accused have the intent to commit a specific crime at the very time and place of breaking and entering. See id. We reaffirmed Gomez's holding that "an information charging burglary must specify by name the ulterior crime which it is alleged the accused intended to commit upon entry into the building." Id.
We also considered, and rejected, the prosecution's argument that the other counts of the information cured the defect in the burglary count. We noted that "one count in an information may by proper reference incorporate, without repeating, the allegations more fully set forth in another count." Id. at 507, 431 P.2d at 767. However, "[s]uch reference must be clear, specific and leave no doubt as to what provision of another count is intended to be incorporated." Id.
The burglary count in Martinez did not incorporate by reference either of the other counts, nor did the other counts make reference to the burglary count. See id. In light of the "absence of a clear and specific incorporation by reference," we concluded that the burglary count must be evaluated independently of the other counts. Id. Because the burglary count was fatally defective, we reversed the defendant's burglary conviction. *68 See id.; accord Henson v. People, 166 Colo. 428, 430, 444 P.2d 275, 276 (1968).
Thus, we have held that the specific ulterior crime that the defendant allegedly intended to commit is an essential element of the crime of burglary. In addition to Gomez, Martinez, and Henson, we have explained on several other occasions that the failure to charge an element of a crime renders an information or indictment fatally defective because the allegations do not charge a crime. See, e.g., Cervantes v. People, 715 P.2d 783, 786 (Colo.1986); People v. Bowen, 658 P.2d 269, 270 (Colo.1983); People v. Moore, 200 Colo. 481, 484, 615 P.2d 726, 728-29 (1980); see also People v. Thomas, 832 P.2d 990, 992 (Colo.App.1991). Consequently, our precedent provides, with unmistakable clarity, that a burglary conviction cannot stand if the information failed to specify the ulterior crime that the defendant was alleged to have intended to commit at the time of the unlawful entry.
Similarly, therefore, the specific crime that the defendant allegedly intended to commit at the time of the unlawful entry is an essential element of the crime of trespass. Applying this principle to the facts of this case, as the court of appeals did, requires reversal of the defendant's conviction. See People v. Williams, 961 P.2d 533, 535-36 (Colo.App. 1997); see generally Cervantes, 715 P.2d at 786 ("The sufficiency of an information is a matter of jurisdiction, so any conviction based on an information requiring major amendment is void."). Because the information failed to allege an essential element of the crime of trespass, the information was fatally defective, and the defendant's conviction for trespass cannot stand.[1]

C.
The majority reaches a different conclusion from that mandated by our case law because it finds that the General Assembly has abrogated our precedent through statutory amendment. See maj. op. at 61-62.
It is true that the burglary statute has been amended since Gomez, Martinez, and Henson were decided. The statute was amended during the 1971 repeal and reenactment of the Colorado Criminal Code. By this legislation, the General Assembly abolished common law crimes not described by the reenacted Criminal Code, but "it took care to note that this abolition did not `affect the use of case law as an interpretative aid in the construction of the provisions of this code.'" Cooper v. People, 973 P.2d 1234, 1239 (Colo. 1999) (quoting C.R.S. § 40-1-401 (1971 Supp.)).
Prior to 1971, the burglary statute provided that a person commits the offense if that person entered "with intent to commit murder, robbery, rape, mayhem, larceny, or other felony or misdemeanor." § 40-3-5, C.R.S. (1963) (emphasis added). In 1971, the General Assembly amended the burglary statute to read, as it does today, that one commits the offense if that person enters "with intent to commit therein a crime." § 18-4-202 & -203 (emphasis added). The majority holds that this change in language is so extensive that it manifests a legislative intent to overrule our previous case law applying the burglary statute. See maj. op. at 61. I disagree.
While the distinction between the prior burglary statute and the present one is clear, the difference is not. The new statute merely eliminates the non-exclusive list of crimes that may qualify as an ulterior offense in favor of the non-exclusive term "crime." Indeed, the phrase "felony or misdemeanor" in the prior version of the statute is equivalent to the term "crime" in the new version. The change in statutory language neither added to nor subtracted from the list of qualifying crimes; rather, it eliminated superfluous language in the earlier statute. That is, the new version of the burglary statute has precisely the same meaning as the last.[2]
*69 Moreover, the majority points to nothing in the legislative history of the 1971 amendments that indicates an intent to overrule our previous interpretations of the burglary statute. The General Assembly has, however, expressed the intent to retain our pre-1971 case law as an "interpretative aid" in construing the reenacted Criminal Code. Indeed, in Cooper, we recently reiterated the fact that our pre-1971 burglary case law remains our guide in interpreting the amended burglary statute. See 973 P.2d at 1239. Therefore, I would not abandon our case law as readily as the majority does. Where, as here, the statutory amendments do not materially alter the prior burglary statute, I believe our case law construing the prior statute retains precedential force. Overruling our precedent in this circumstance runs afoul of both legislative intent and the rule of stare decisis.
In my view, our holdings in Gomez, Martinez, and Henson are good law and should control the resolution of this case. Applying these cases to the facts before us, I would find the information fatally defective as to the trespass count. Thus, I would reverse the defendant's trespass conviction.

III.
In addition to frustrating legislative intent and contradicting stare decisis, the majority's new rule regarding the sufficiency of a criminal information raises constitutional concerns.

A.
Under current law, an information is sufficient only if "`it advises the defendant of the charges he is facing so that he can adequately defend himself and be protected from further prosecution for the same offense.'" People v. Rodriguez, 914 P.2d 230, 257 (Colo. 1996) (quoting Cervantes, 715 P.2d at 785); see also People v. Tucker, 631 P.2d 162, 163-64 (Colo.1981). The requirement of notice to the defendant of the charges against him is grounded in the Sixth Amendment to the United States Constitution, which states, "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." U.S. Const. amend VI.; see Government of the Virgin Islands v. Pemberton, 813 F.2d 626, 631 (3rd Cir.1987). As we have explained, "[t]he notice given to a defendant of the charges against him should be sufficient to ensure that he is not taken by surprise by the evidence offered at trial." Cervantes, 715 P.2d at 785.[3]
Under the majority's new approach to the sufficiency of an information charging burglary or trespass, the defendant is not given adequate notice of the charges against him and the evidence he should be expected to meet at trial. With respect to a burglary charge, a "defendant who is not given notice of which offense the prosecution charged was intended by the entry would be substantially limited in the preparation of a defense ... because [the information] does not contain an essential element of the offense intended to be charged." Pemberton, 813 F.2d at 632. The considerations of fair notice of the charge are "`of particular importance in burglary prosecutions because the actual proof at trial involves evidence of at least two crimes, the unlawful entry and the intent to commit the ulterior crime.'" Id. (quoting United States v. Thomas, 444 F.2d 919, 923 (D.C.Cir.1971)). "`When the ulterior crime can range from crimes like murder, assault and rape to arson and larceny there is particular need for specificity because of the wide variations in the elements of such ulterior offenses.'" Id. (quoting Thomas, 444 F.2d at *70 923); see also State v. Berryhill, 703 So.2d 250, 253, 256 (Miss.1997).
Thus, we concluded in Gomez that "`[t]he averment that the accused has broken and entered a dwelling house for the purpose of committing a felony fails wholly to apprise him of the specific offense which it is claimed he intended to commit. The defendant is not to be oppressed by the introduction of evidence which he cannot be prepared to meet.'" 162 Colo. at 79, 424 P.2d at 388 (quoting 13 Am.Jur.2d § 36, at 341) (emphasis added). The ulterior crime that the defendant allegedly intended to commit "could be probably one hundred different crimes and/or misdemeanors." Berryhill, 703 So.2d at 254. If the prosecution were allowed to allege burglary without alleging the constituent elements of the burglary, "defendants would be subject to defend against evolving prosecutorial theories over the course of the postindictment proceedings." Id. at 256. A defendant "could be accused of having committed hundreds of crimes in the course of his burglary if the State were allowed to decide as the prosecution proceeded what it wished to prove." Id.
The majority responds to this problem of notice to the defendant with two arguments. The majority first asserts that the information charging Williams afforded adequate notice of the trespass charge against him because it tracked the language of the trespass statute. See maj. op. at 60 & 63. On numerous occasions, however, we have rejected the notion that simply repeating statutory language in an information or indictment invariably renders the charging document sufficient. We have explained that "`[i]t is an elementary principle of criminal pleading that where the definition of an offense, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species, it must descend to particulars.'" Tucker, 631 P.2d at 164 (quoting Russell, 369 U.S. at 765, 82 S.Ct. 1038) (emphasis added); see also People v. Buckallew, 848 P.2d 904, 909 (Colo. 1993); People v. Donachy, 196 Colo. 289, 291, 586 P.2d 14, 16 (1978). As explained above, the "particulars" are especially important to the charge of burglary.
The majority next asserts that an information that is insufficient because it fails to specify the ulterior crime for a burglary or trespass charge may be cured by a bill of particulars or by reference to various "surrounding circumstances." See maj. op. at 63-65. With respect to the first point, however, we have repeatedly held that a bill of particulars cannot save an insufficient information or indictment. See, e.g., Tucker, 631 P.2d at 164; Donachy, 196 Colo. at 291, 586 P.2d at 16. As to the adequacy of surrounding circumstances, I find the majority's analysis unpersuasive for the following reasons.
The majority resolves the instant case by concluding that the other counts (attempted robbery and assault) provided Williams with sufficient notice of the ulterior crime implicated by the trespass count. See maj. op. at 64. First of all, as the majority acknowledges, when we are determining the sufficiency of a particular count, we look only to the "four corners of that count to make sure that the essential elements of a crime were alleged therein directly or incorporated by specific reference." Cervantes, 715 P.2d at 786; see maj. op. at 64. In this case, none of the counts made a specific reference to any other; thus, the other counts could not have cured the defective trespass count.
Secondly, even if it were appropriate to look to the other counts to save the defective trespass count, I do not agree that these counts eliminated uncertainty as to the ulterior crime alleged to be a part of the trespass. To reiterate, the trespass count contained no limitations on which crimes Williams may have intended to commit at the time of gaining entry into the vehicle. Thus, the most that Williams could have deduced from the other two counts is that attempted robbery and assault were probably among the multitude of ulterior crimes that the prosecution may seek to prove as part of the trespass charge.[4]
*71 The uncertainty of the trespass count in this case is exacerbated by the fact that the crime of trespass requires that the defendant possess the intent to commit a specific crime at the time of the entry into the vehicle. See Cooper, 973 P.2d at 1242 (analyzing issue of contemporaneous intent in context of burglary statute); but see ch. 113, sec. 5, § 18-4-202, Colo. Sess. Laws 1999, at 169 (West Colo. Legislative Serv., No. 3, 1999) (amending burglary statute, effective July 1, 1999). Thus, the fact that Williams was charged in the other counts with possessing the intent to commit robbery and assault after he had entered the vehicle does not answer the crucial question of his alleged intent at the time he gained entry. To illustrate, the attempted robbery and assault counts merely asserted that Williams intended to rob and assault at the time of the acts constituting attempted robbery and assault (i.e., after he gained entry into the car). These allegations did not preclude the prosecution from alleging that, at the time of the entry, Williams possessed the intent to commit some other, yet unidentified, crime (e.g.rape, murder, mischief, etc.). Thus, the defective information subjected the defendant to potentially evolving prosecutorial theories  contrary to one of the primary purposes of an information (to ensure that the defendant is not taken by surprise by the evidence offered at trial).
Thirdly, the majority offers no limitations on the type of "surrounding circumstances" that a defendant is required to consult in order to know the charge against him. While the majority in this case appears to confine its investigation to the other counts in the information, it certainly does not hold that these are the only relevant means of ascertaining the charges. In fact, the majority appears to take a very liberal view of which means may be appropriate. The majority even suggests that "`broad reciprocal discovery rules'" may provide the defendant with an adequate avenue to discern the offense that he is alleged to have committed when the charging instrument has failed to furnish this notice. Maj. op. at 62 (quoting State v. Waters, 436 So.2d 66, 68 (Fla.1983)). By failing to narrow in any fashion the means by which the defendant must pursue notice of the charged offense, the majority makes hollow the defendant's constitutional right to be informed of the nature and cause of the accusation against him. See U.S. Const. amend VI.

B.
Under the majority's new standard for an adequate information, not only is a defendant deprived of notice of the specific ulterior crime of a burglary or trespass charge, but the jury is deprived of this notice as well. Thus, the majority's new rule creates another constitutional dilemma: whether the jury unanimously convicted the defendant of every element of the crime charged. Because the defendant and the jury may begin the trial without notice of an element of the crime charged, the majority's standard absolutely depends upon the jury instructions to impart this vital information.
It is well established that a criminal conviction may only ensue upon proof beyond a reasonable doubt of every element constituting the crime charged. See Chambers v. People, 682 P.2d 1173, 1175 (Colo.1984). "A corollary to this principle is that members of a jury must be adequately instructed to enable them to assess whether every element of an offense has been proved beyond a reasonable doubt." Id.; see also People v. Martinez, 634 P.2d 26 (Colo.1981); but see Neder v. United States, ___ U.S. ___, ___ _ ___, 119 S.Ct. 1827, 1836-37, 144 L.Ed.2d 35 (1999). Consequently, we have held that, in the context of jury instructions in a burglary case, "[i]t is therefore necessary that the specific ulterior crime be clearly and accurately defined in order to determine if the defendant's intent was that proscribed by the burglary statute." People v. Archuleta, 191 *72 Colo. 482, 485, 554 P.2d 307, 310 (1976); see also People v. Barnhart, 638 P.2d 814, 816 (Colo.App.1981).
This constitutional mandate was violated in the case before us. Here, the defective information was followed by defective jury instructions. The jury instructions, like the information, did not identify the specific ulterior crime that Williams was alleged to have intended to commit at the time of the entry into the vehicle. See discussion supra Part I. Thus, his trespass conviction is doubly suspect.
In light of the faulty information and jury instructions in this case, the jury may not have unanimously agreed upon the particular ulterior crime that Williams intended to commit at the time of his entry into the vehicle. The jury instructions did not limit the jury's consideration to the crimes of attempted robbery or assault; in fact, the jury was not informed that it must unanimously find that Williams intended to commit a specific crime at the time of the trespass. Hence, each jury member may have found a different crime to serve as the predicate offense for the trespass count, in which case the jury would not have unanimously agreed upon the existence of any one predicate offense. Moreover, under these instructions, the jury (or individual jury members) could have voted to convict based on a finding that Williams possessed only a general criminal or nefarious intent (i.e., an intent to do bad things) at the time of the entry into the vehicle.
The prejudice from the erroneous jury instructions in this case was exacerbated by the fact that the jury (like all trial participants) began the trial without notice of the specific ulterior crime of the trespass charge. To illustrate, in those jurisdictions, such as Kansas, which find that an information that fails to state the ulterior crime of a burglary offense is defective only as to form, the courts are scrupulous in demanding that the jury instructions not share this defect. See State v. Linn, 251 Kan. 797, 840 P.2d 1133, 1139 (1992). The Kansas Supreme Court has held that a jury instruction as to the offense of burglary "is defective unless it specifies and sets out the statutory elements of the offense intended by an accused in making the unauthorized entry." Id. Hence, where the information is similarly defective, "the trial judge's failure to state the specific underlying felony or felonies and their elements prevent[s] the jury from rendering a lawful verdict and [is] an error of constitutional magnitude depriving the defendant of a fair trial." Id. In contrast, the majority holds that, even in light of the defective jury instructions, Williams suffered no prejudice from the defective information. See maj. op. at 64.
Hence, the majority's new standard for the sufficiency of an information creates other constitutional obstacles to a fair trial. Indeed, these obstacles are present in the case before us, and they vividly demonstrate that the new course set by the majority should not be taken.

IV.
I believe our case law clearly holds that the information in this case was fatally defective as to the trespass charge, and I see no reason to overrule that case law. Because the majority's decision is contrary to our case law and because its new rule raises constitutional concerns in my view, I respectfully dissent.
Chief Justice MULLARKEY and Justice BENDER join in this dissent.
NOTES
[*] Chief Justice Mullarkey, Justice Martinez, and Justice Bender would have granted the Petition for Rehearing.
[1] We granted certiorari on the following issues:

(1) Whether an information charging a defendant with a crime such as burglary or criminal trespass must specify the specific ulterior crime the defendant intended to commit.
(2) Whether a defendant must demonstrate that he was actually prejudiced by a failure to name the specific ulterior crime in an information charging him with burglary or criminal trespass when he raises such a claim for the first time on appeal.
[2] See § 18-2-101, 8B C.R.S. (1986 & 1995 Supp.); § 18-4-301, 8B C.R.S. (1986).
[3] See § 18-4-502, 8B C.R.S. (1986 & 1993 Supp.).
[4] See § 18-3-204, 8B C.R.S. (1986 & 1993 Supp.).
[5] He also argued that the trial court erred by failing to instruct the jury sua sponte on the defense of intoxication and that the trial court submitted an improper jury instruction on the criminal trespass count by not including "knowing and unlawful" entry as part of the offense of criminal trespass into an automobile. He also argued that certain prosecutorial remarks required reversal. The court of appeals found no error.
[6] Because the jury found that Williams committed the crime of first degree criminal trespass in 1995, we rely upon the statutory version then in existence. However, the General Assembly subsequently amended this section in 1998, removing the language "intent to steal anything of value or." As amended, the criminal statute reads, in part:

A person commits the crime of first degree criminal trespass if such person knowingly and unlawfully enters or remains in a dwelling of another or if such person enters any motor vehicle with intent to commit a crime therein.
§ 18-4-502, 6 C.R.S. (1998) (emphasis added).
[7] The Colorado District Attorneys Council argued that the change in statutory language was justified by a need to address the increased crime concerns faced by individuals who drive or who are passengers in automobiles. See Hearings on H.B. 92-1078 before the House Judiciary Comm., 58th Gen. Assembly, 2d. Sess. (January 23, 1992). She remarked, "[o]ur cars are no longer places of safety." Id.
[8] But see Government of the Virgin Islands v. Pemberton, 813 F.2d 626, 630 (3d Cir.1987). In Pemberton, the court analyzed a burglary statute that contained the language, "with intent to commit an offense therein." Id. The court held that an information charging burglary that fails to state the offense defendant intended to commit upon entry is inadequate . . . "because it does not contain an essential element of the offense intended to be charged and insufficiently apprises the defendant of what he must be prepared to meet." Id. at 632. New York, on the other hand, has gone so far as to say that omission of the underlying crime in a burglary information is neither a defect of substance nor of form. See People v. Mackey, 49 N.Y.2d 274, 425 N.Y.S.2d 288, 401 N.E.2d 398, 402 (1980) (stating "unless there is read into the words `a crime' more than the Legislature has stated, intent to commit a specific crime is not an element, and the necessity for particulars, and with it the due process question, disappears").
[9] To the extent that this holding conflicts with Gomez, Martinez, and Garcia, we overrule that precedent in light of the change in the criminal trespass statute and our holding that a criminal trespass count that fails to state the ulterior crime does not amount to substantive error.
[10] The jury instruction read:

1. that the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. entered the motor vehicle of Loren Eisele,
4. with the intent to commit a crime therein.
[1] The other counts in the information did not cure the defect in the trespass count. The trespass count did not incorporate by reference either of the other counts, nor did the other counts make reference to the trespass count. See Martinez, 163 Colo. at 507, 431 P.2d at 767.
[2] Furthermore, I note that the trespass statute relevant to this case, section 18-4-502, 8B C.R.S. (1993 Supp.), resembles the prior burglary statute in that each lists eligible crimes by name before adding a catch-all phrase indicating that any other crime may also qualify as an ulterior offense for purposes of the statute. See § 18-4-502 ("with intent to steal anything of value or with intent to commit a crime therein"). This fact provides even more reason to apply our case law construing the earlier burglary statute to the trespass statute at issue in this case.
[3] The notice inquiry requires a reviewing court to "ascertain ... whether the indictment or information contains the elements of the offense intended to be charged `and sufficiently apprises the defendant of what he must be prepared to meet.'" Pemberton, 813 F.2d at 631 (quoting Russell v. United States, 369 U.S. 749, 763-64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)).
[4] The fact that the prosecution charged Williams with only attempted robbery and assault did not preclude the prosecution from asserting that Williams intended some other, yet unidentified, crime at the time of the entry into the vehicle. To sustain the trespass charge, the prosecution need not prove that the defendant actually committed or attempted the ulterior crime; rather, the prosecution need only show that the defendant intended to commit the ulterior crime at time he entered the vehicle. See People v. Archuleta, 191 Colo. 482, 484, 554 P.2d 307, 309 (1976).